UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STACEY F. LEE,

                    Plaintiff,

v.                                                                                            5:16-CV-1362
                                                                                              (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

STACEY F. LEE
  *Pro Se*
4509 Odell Place
Jamesville, NY 13078

U.S. SOCIAL SECURITY ADMIN.                               FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 18.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Stacey F. Lee ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), is the Defendant's

motion for judgment on the pleadings. (Dkt. No. 14.) For the reasons set forth below, it is recommended that Defendant's motion be granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1970. (T. 64.) She completed the 9th grade. (T. 164.) Generally, Plaintiff's alleged disability consists of neck injury, back injury, hip injury, depression, and tendinitis. (T. 163.) Her alleged disability onset date is January 31, 2009. (T. 64.) Her date last insured is June 30, 2014. (*Id.*) She previously worked as a retail sales associate. (T. 165.)

   B.   **Procedural History**

On January 22, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 71.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 2, 2014, Plaintiff appeared before the ALJ, Jennifer Gale Smith. (T. 28-63.) On December 5, 2014, ALJ Smith issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 9-27.) On June 16, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 4-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-23.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2014 and Plaintiff had not engaged in substantial gainful

2

activity since January 31, 2009.  (T. 14.)  Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the thoracic spine, degenerative disc disease of the cervical spine, history of bilateral upper extremity tendinitis, depression, anxiety, history of ADHD, history of panic attacks, and history of alcohol abuse.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 15.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with additional non-exertional limitations.  (T. 17.)[1]  The ALJ found that Plaintiff could occasionally climb ramps and stairs, kneel, crouch, crawl, balance and stoop.  (*Id.*)  The ALJ found that Plaintiff could frequently reach in all directions and occasionally reach overhead, and she could frequently handle, finger, and feel.  (*Id.*)  The ALJ found that Plaintiff should not have exposure to cold temperatures during working hours.  (*Id.*)  The ALJ found that Plaintiff was limited to simple, routine and repetitive tasks at a low-stress job, defined as occasional decision making, judgment required and changes in the work setting.  (*Id.*)  The ALJ found that Plaintiff should only have occasional contact with supervisors, coworkers, and the public.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 20-23.)

## II.     THE PARTIES' BRIEFING

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

Plaintiff did not file a brief in this matter. Defendant makes two arguments in support of her motion for judgment on the pleadings. First, Defendant argues the ALJ's RFC determination was supported by substantial evidence. (Dkt. No. 14 at 20-24 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 24-25.)

In this District, General Order 18 cautions plaintiffs that:

> Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were made by the Commissioner of Social Security that entitle Plaintiff to relief. The failure to file a brief as required by this Order will result in the consideration of this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal.

N.D.N.Y. General Order No. 18 at 4.[2]

General Order 18 states that the Court will "consider" a case notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts." N.D.N.Y. General Order No. 18 at 4. In a case such as this, where Plaintiff is proceeding *pro se*, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for *pro se* litigants. Accordingly, the Court has, despite Plaintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence. *See Gregorka v. Comm'r of Soc. Sec.,* No. 6:13-CV-1408, 2015 WL 3915959, at *4 (N.D.N.Y. June 25, 2015).

## III.  RELEVANT LEGAL STANDARD

---

[2]  Plaintiff was provided a copy of General Order 18 on November 16, 2016. (Dkt. No. 6.)

4

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### A. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1)[3].  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c).

The relevant factors considered in determining what weight to afford a medical source statement include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 404.1527(c)(1)-(6).

In formulating Plaintiff's physical RFC the ALJ relied on the medical source statement provided by consultative examiner, Kalyani Ganesh, M.D., and objective medical evidence in the record. (T. 18.)  Dr. Ganesh performed an examination and provided a medical source statement on April 3, 2013.  (T. 298-301.)  Based on her examination, Dr. Ganesh opined that Plaintiff had "no gross physical limitation noted for sitting, standing, walking, or use of upper extremities."  (T. 301.)  The ALJ afforded Dr. Ganesh's opinion "some weight," but stated that the opinion was not given "more weight, because there [were] some positive findings in the record that warrant[ed] some type of limitations."  (T. 18.)

---

[3] Effective March 27, 2017, many of the Regulations and SSRs cited herein have been amended. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

7

Indeed, as stated by the ALJ, Plaintiff exhibited some restricted range of motion in her lumbar and cervical spine; March 2009 imaging showed very mild degenerative changes at L1-L2, and a September 2011 MRI showed degenerative changes at C5-C6 and C6-C7. (T. 225, 431.) A September 2014 MRI showed mild disc space narrowing and a minimal disc bulge. (T. 621.) Imaging also showed no stenosis or significant cord or nerve root compression. (T. 328, 621.)

The record also contained medical source statements provided by Lisa Vallee, D.C. and Charles Vallee, D.C. Dr. L. Vallee opined Plaintiff could occasionally lift fifteen pounds, stand/walk less than two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday. (T. 287-288.) The ALJ afforded Dr. L. Vallee's opinion "little weight," reasoning that chiropractors were not acceptable medical sources, Plaintiff testified that she had no problems sitting, and there was no evidence to support the standing/walking limitations. (T. 19.) Dr. C. Vallee opined Plaintiff could sit for twenty minutes at one time and less than two hours total in an eight hour workday; stand/walk for fifteen minutes at a time and less than two hours in an eight hour workday; occasionally lift less than ten pounds and rarely lift ten pounds; occasionally look down, turn her head right/left and hold her head in a static position; rarely reach; and occasionally use her hands. (T. 354-356.) He further opined Plaintiff would miss four or more days of work per month and would frequently be "off task." (T. 356.) The ALJ afforded Dr. C. Vallee's opinion "very little weight." (T. 20.) The ALJ reasoned that Dr. C. Vallee was not an acceptable medical source, Plaintiff stated she did not have problems sitting, and the limitations were inconsistent with Plaintiff's activities of daily living. (*Id.*)

The ALJ properly assessed the opinions of Dr. L. Vallee and Dr. C. Vallee according to the factors outlined in 20 C.F.R. § 404.1527(c)(1)-(6) and her determination was supported by substantial evidence in the record. First, the ALJ properly noted that the chiropractors were not medically acceptable medical sources. There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513(a). Chiropractors are not included within those categories. Chiropractors are listed among examples of "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id.* at § 404.1513(d)(1). Second, the ALJ provided substantial evidence from the record, including medical evidence and Plaintiff's testimony, to support her determination. The ALJ relied on other objective medical evidence, including the examination and statement provided by Dr. Ganesh. (T. 19, 298-301.) The ALJ further relied on Plaintiff's statements regarding her activities of daily living and her own admission that she has no problems sitting. (T. 19-20, 186.)

Regarding mental limitations, the record contained two medical source statements. Consultative examiner, Jeanne Schapiro, Ph.D., examined Plaintiff and provided a medical source statement. (T. 293-297.) On examination Plaintiff was responsive and cooperative, and her manner of relating, social skills, and overall presentation were adequate. (T. 295.) Plaintiff's posture and motor behavior were normal; eye contact was appropriate; speech was normal; thought processes were coherent and goal directed; sensorium was clear; attention, concentration, and memory skills were grossly intact; and she was fully oriented. (*Id.*) Dr. Shapiro stated that Plaintiff:

9

> did not appear limited in her ability to follow and understand simple instruction or directions, or complete simple tasks independently. She may be mildly limited in her ability to perform complex tasks independently because of her ADHD. She is mildly limited in her ability to maintain attention and concertation. She is not limited in her ability to maintain a regular schedule. She is probably mildly limited in her ability to learn new tasks and to make appropriate decisions, to relate adequately with others. She is moderately limited in her ability to deal with stress.

(*Id.*) The ALJ afforded Dr. Shapiro's opinion "great weight." (T. 18.) The ALJ reasoned that the doctor's opinion was consistent with her examination and with Plaintiff's global assessment of functioning ("GAF")[4] score of 62. (*Id.*) The ALJ also relied on treatment notations which indicated Plaintiff primarily dealt with situational stress. (T. 20.)

Treating sources Lynn McHugh, LMFT and John Manning, M.D. completed a joint medical source statement. (T. 351-353.) They opined that Plaintiff was "seriously limited, but not precluded," in her ability to maintain attention and concentration for a two hour segment; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and work week without interruptions from psychologically based symptoms; and deal with normal work stress. (T. 352-353.)[5] They opined that Plaintiff was "unlimited, very good" or "limited but satisfactory" in all other areas of mental functioning. (T. 352-353.) They opined Plaintiff would miss more than four days of work per month due to

---

[4] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed.2000)).

[5] Seriously limited, but not precluded, was defined as "the ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." (T. 352.)

her "lifelong impairment" exacerbated by chronic pain from her physical impairments and "emotional disruption." (T. 353.) The ALJ afforded the treating source opinion "some weight." (T. 19.) The ALJ reasoned the opinion, that Plaintiff would miss four or more days per month due to chronic pain from spinal stenosis, was inconsistent with the record. (*Id.*) Indeed, objective imaging did not document any serious physical abnormalities and Dr. Ganesh found no significant physical limitations. (T. 225, 301, 328, 431, 621.) In addition, for the reasons further addressed herein, the ALJ properly assessed Plaintiff's credibility regarding her assertions of pain and limiting effects of her symptoms.

The ALJ's RFC determination was ultimately supported by the opinions of the consultative examiners and the record as a whole. The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims who's "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin*, 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin*, 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin*, 667 F. App'x 319 (2d Cir. 2016). The ALJ further relied on the objective medical evidence in the record, treatment notations, and Plaintiff's activities of daily living.

In making her RFC determination, the ALJ properly assessed Plaintiff's credibility. In determining whether a plaintiff is disabled, the ALJ must also make a determination as to the credibility of the plaintiff's allegations. " 'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.' " *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that " '[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,' " and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.' " *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (T. 18.) In making her credibility determination, the ALJ relied on objective imaging, Plaintiff's activities of daily living, treatment, and other statements in the record. (T. 19.) Indeed, as discussed by the ALJ, Plaintiff's daily activities included preparing meals, cleaning, doing laundry, driving, shopping, caring for

her seven dogs, and spending time on the computer.  (T. 16, 181-185, 294, 296.) Plaintiff maintained her own personal care and helped care for her grandchild.  (T. 16.)

The ALJ also noted that Plaintiff's treatment was largely conservative.  (T. 19.) Plaintiff had no surgeries and her treatment consisted mostly of pain management.  (T. 38-39.)  Plaintiff often reported that her medication was effective.  (T. 38, 268, 298, 543.)  Because an ALJ has the discretion to evaluate the credibility of a plaintiff and to arrive at an independent judgment in light of the medical and other evidence, it is recommended that the ALJ's credibility determination be upheld.  *See Wright v. Berryhill*, 687 F. App'x 45, 49 (2d Cir. 2017) (district courts' review of an ALJ's credibility determination is "sharply limited [in] scope"); s*ee Salmini v. Comm'r Soc. Sec.,* 371 F. App'x. 109, 113 (2d Cir 2010) ("It's the function of the ALJ, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.").

It is recommended that the ALJ's RFC determination, including her credibility determination, be upheld. The ALJ did not commit legal error and substantial evidence supported her determination.

### B.  The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to

the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986). At step five, the ALJ found that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. (T. 21.) The ALJ's determination was supported by substantial evidence and it is therefore recommended that the determination be upheld.

Here, the ALJ presented a hypothetical to a vocational expert that paralleled her ultimate RFC finding. (T. 58-60.) The vocational expert identified occupations which existed in significant numbers in the national economy that a hypothetical person with Plaintiff's age, education, work experience, and RFC could perform. (T. 59-60.) The ALJ properly relied on this testimony in finding that Plaintiff was not disabled under the Act. (T. 22-23.) Because the ALJ did not err in her RFC assessment, the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). It is therefore recommended that the ALJ's step five determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:   January 25, 2018

                                            William B. Mitchell Carter
                                            U.S. Magistrate Judge